19-2234. We have just this one argument this afternoon. As noted, I'm Judge Kelly. We also have on the panel today Judge Wollman and Judge Strauss. Counsel for Mr. Harrison, Ms. Curls. Counsel for Governor, Mr. Casey. Welcome to both. We are in session by telephone conference today, but we do have a public access phone number for any member of the public who would like to listen to this argument in this particular case, so I welcome those public listeners as well. Given the format of our argument today, we intend to give the parties each about one minute to present your argument without interruption from us. After that, you should be prepared to answer questions as they come from the panel. This initial minute is not going to be timed by the deputy or us. We'll just give it our best estimate. Just know that you've at least got a bit of time to get up and going with your argument before we begin peppering you with questions. I would ask that counsel speak slowly or at a slower pace and communicate as smoothly as possible with the question and answer without the typical visual cues. It's going to be a little bit more challenging, but I'm confident that we will do just fine. Be assured that you each will have plenty of time to make your argument. With that said, if there are no other matters that need to be addressed before we get started, we are ready to hear from you, Ms. Kersh. Thank you, and may it please the court. I'd like to make a couple comments about the factual record in this point before I turn to the issue of whether the error in this case rises to the level of plain error. I'd like to point out that for Mr. Harrison, there was no option of pleading guilty in front of Judge Boo and then being sentenced by Judge Boo. Even if he pled guilty before Judge Boo, the case would have gone back to Judge Fenner for sentencing. And so that's why you see at the bottom of page 19 on to page 20, Judge Boo explaining to Mr. Harrison, you can have a bench trial or you can have a jury trial, but you have to do one or the other in order for me to sentence you. Secondly, I think it's important to remember that all of the remarks in this case by the court were made in the context of Mr. Harrison thinking about going pro se at trial, wanting to represent himself. Early on, there's a remark by Judge Boo where he says, after hearing the terms of the proposed plea agreement, he says, well, under that, Mr. Harrison is worse off than if he pleads guilty under the agreement, because if he goes to trial and is convicted, he could argue for whatever sentence he wants. He wouldn't be constrained by the plea agreement, which called for both parties to argue for a within guideline range And so I don't think that Judge Boo intended this at all, but I do think the remarks had the effect of undermining defense counsel. And why that is important is because you see at page 11, defense counsel interjects and says, well, Judge, now there are good reasons to plead to an agreement that limits both sides to arguing within the 70 to 87 month range. And what counsel was referring to is the possibility of an upward variance by the judge. And so that, and then defense counsel says, Judge, I don't know how much you want to get into the facts of the case. Judge Boo says, no, I really don't want to do that. And so they move on. And that topic is never mentioned again. It's never mentioned that this plea agreement actually does have benefits to Mr. Harrison. Counsel, you mentioned the pro se point that happened when Mr. Harrison was deciding whether to go pro se. Is there any significance to that in your view? And if so, why? Well, I think that he's considering the fact of going pro se indicates he has some dissatisfaction with counsel. And so that simply emphasizes Judge Boo's remarks. Because Judge Boo's speaking in a way that Mr. Harrison wants to hear. He's saying that plea offer is not all that good. And then later on he says, well, you know, between me and Judge Fenner, most people probably want me to do their sentencing. And so by that subtle undermining of counsel, this makes Mr. Harrison predisposed to listen to whatever Judge Boo has to say. He's hearing what he wants to hear. So in that sense, I think it makes a difference. I think context matters. Now, why is the remedy that you're seeking, the specific offer that was discussed at the agreement, and not just going back and giving the opportunity to plead guilty rather than going to trial? My remedy is premised on Loeffler v. Cooper, which is not a case involving Rule 11 error. But factually, it's very analogous. The defense counsel was found ineffective in that case. He misadvised his client to turn down a favorable plea offer. The client ended up going to trial and being sentenced to more time. And the court in that instance said, sometimes resentencing alone will not be enough. A remedy must cure the particular error at issue. And in that instance, the Supreme Court said the remedy here is to require the prosecution to re-offer the plea proposal. So what I'm suggesting is the remedy is not that Mr. Harrison receives a new trial. I would say the remedy, he doesn't have the option for a new trial. His option is to plead guilty. And I think he should be, in order to cure the error that actually occurred, he should be put back in the position as when he started the case. Meaning he has the opportunity to accept the offer and both sides would be limited to arguing for 70-87 month guideline range. I was just going to say, when the government argues that the only potential remedy is just a resentencing, given Loeffler, and then Fry v. Missouri also has some discussion that is more on point with the context of this violation. The Supreme Court said that in the Loeffler case that this type of remedy is rare. And the issue that I'm having, I guess there are two issues with this remedy. One is what the Supreme Court said about it. Three issues. Second is, this is not a constitutional case. This is a Rule 11 case. And I wonder whether that remedy is limited to constitutional cases. And third, our decision in Norris in 2007, which suggested that this type of specific performance is not available. I know I'm throwing a lot at you, but I'm wondering in whatever order you want to take it, whether you can address some of those concerns I have. Okay. Let me try and start. First of all, I believe you said that Loeffler says that it is a rare remedy. Something along those lines, yeah. And I would say that this is the rare case. In these Rule 11 cases, you're always getting comments where usually the client is thinking of going to trial and the court has said, well, you know, you're going to get more time if you go to trial. And then the client ends up pleading guilty. We have the opposite side of that coin. Here we have a judge saying you will do better if you go to trial with me and I sentence you. So the remedy is going to have to be unique to address a completely different factual situation. You may, let me see here, I believe it's the Baker case that I cited in my opening brief. I think it's from the Fourth Circuit. It is somewhat analogous. And I think that this is a Rule 11 violation versus the constitutional claim. Right. And so is Loeffler limited to Sixth Amendment violations? I don't think so because the remedy in Rule 11 cases is specifically premised on Strickland versus Washington and on Bagley. That is in, those are either cited in Dominguez-Benitez and I think they may be cited again in Davila. So the remedy that the Supreme Court said in Dominguez-Benitez, the remedy, they're drawing on Sixth Amendment constitutional issues. And they're saying that is the remedy for Rule 11 violations. So I don't think there's indication that this could only apply to a constitutional violation. I think it's actually specifically contemplated by the Supreme Court that we're going to apply a traditional Sixth Amendment remedy to a rule violation. In the Norris case? Yeah, and I'm getting my notes out here on Norris. Oh, Norris was where they blew up the plea in the middle of it. They had changed the terms of the plea offer, I think, right in the middle of the colloquy. Well, okay. In that instance, and here I think I would go back to Loeffler again. In Norris, the case is saying that that was just an executory agreement. It had not been accepted by the parties. Therefore, there's no relief for Mr. Norris. Same is true in the Loeffler or Frey context, though. Frey was the failure to communicate a plea offer. It had never been accepted. The defendant didn't even know it existed. In Loeffler, same thing. He had never accepted the plea offer because his attorney gave him that advice that he should reject it. So again, both executory agreements, and yet remanded for reopening the possibility of a plea. So, I understand Mr. Casey's authority, and I think that those might apply in the typical situation that I mentioned before, where the court kind of coerces or induces a guilty group. This is the flip side of that argument. And so, there's very little, if any, case law that really tells us what the remedy is. So, Norris, I would simply say, is factually distinguishable. Going back to the argument, now, does this rise to the level of plain error? I think there's several factors that are persuasive here. First of all, when Mr. Harrison, when he first comes into this settlement conference, one of the first things he says is, I really am not interested in going to trial. I would like to plead guilty. I'm willing to do it today. And he says this even before the Rule 11 violation occurs. Two minutes remaining. So, he prefers to plead guilty. Yes? Two minutes remaining. Okay. I'll reserve my time for rebuttal, then. Thank you. All right. Thank you, Ms. Kurz. Before we move on to Mr. Casey, are there any other questions from you, Judge Strauss, at this point? Well, I would like to ask one follow-up question on the remand, which is, you know, supposing that, you know, we follow Norris versus the Loeffler line, would a permissible remedy in your view, or a remedy that you think is appropriate, be undoing what happened here? In other words, sending him back, undo the conviction, so to speak, vacate the conviction, vacate the sentence, and sending him back, basically, to ground zero, rather than in trying to enforce the plea agreement offered by the government? I think it's a permissible remedy. I have concerns with doing it that way, because Mr. Harrison loses the benefit of the bargain, which was the recommendation within a certain upward variance. And that, I think, would have been diminished where both parties are constrained to the guideline range. Doesn't make it impossible, obviously. And so, in that sense, I think your remedy is permissible. If the judge was inclined to impose an upward variance, and if it went above, I believe the sentence was 92 months, I think then it would be up to the defense, do they want to make an objection, perhaps pursuant to North Carolina versus Pierce? Would it help if it was sent back to a different judge, just out of curiosity? No, I mean, I suppose that's permissible as well. I just don't see that the Eighth Circuit, on providing more specific direction to the district court, you know, one of the issues in Lofler and in Frye was that both of those were habeas proceedings arising from a state court. So you had issues of comity that had to go into fashioning the remedy. It had to be a remedy that could actually take place under state court law. We don't have that problem here. And so, I don't feel that the Eighth Circuit is particularly constrained in the remedy it wants to fashion. I think also, too, I understand that we had a bench trial, but that bench trial was all of 78 pages, score witnesses, maybe took, I don't know, two to three hours. It's not like I'm asking the government for a windfall. I'm just asking that he be put back into the same position he was before the Rule 11 era. Judge Wolman, do you have any additional questions? No, I don't. Thank you. All right. Well, thank you, Ms. Kurz. We will now hear from Mr. Casey. Thank you, Your Honors, and may it please the court. I think looking at this from the government's perspective, and I think it's fair to just point out that the violation occurred while the government wasn't in the room. And so, when fashioning a remedy or considering the case, I think the court needs to also consider that the government, I think, particularly the Assistant U.S. Attorney, presented himself very well at that hearing in terms of how he conducted himself not knowing what conversation had happened with him not in the room. But secondly, the government went to trial, met its burden, and proved guilt. And I don't think that any remedy that sets that aside when the government played no role in the violation would be appropriate in this case. I don't think we get there, though, because I don't think that Mr. Harrison meets his standard of proving plain error. And I think there are three facts that are clear from the record of the pretrial conference that are dispositive of this case. And the first one is that Mr. Harrison said he would take an offer if it was three or four years, and if it was anything more than three or four years, he might as well go to trial. He wanted three or four years, he wouldn't accept more, and more than that, he wanted assurances of three or four years. And so the quote that Mr. Harrison in his brief keeps going to is the quote on page five of the transcript that I really don't even want to go to trial. But at no point do they quote the actual sentence. The full sentence is, I really don't even want to go to trial, but it's just like, I mean, like, the stuff that I'm asking for, I'm not getting. And it's clear from that conversation on page five, and then his counsel's affirmation of it on page seven of the transcript, that what Mr. Harrison wanted was three or four years, and it wasn't an offer that he was getting. The second fact that I think is clear on the transcript is he wanted to appeal his motion to suppress. And so when the court, and actually the court makes a mistake when it says to the contrary, but when the court tells him when he's faced with the ability to plead up, had he pledged straight up, he could not have appealed. The only way to appeal a motion to suppress is through a plea agreement under Rule 11A2, which requires the consent of both the government and the court to preserve that issue for appeal. So pleading straight up takes away his appeal of the suppression issue, so again, he wasn't going to do it for that reason. And then the third fact is that the government offered, didn't offer a deal that was going to allow him to do either of those things. And so that wasn't an offer on the table. And so with those facts, he just simply cannot meet his burden of proving that he wasn't, or that he was going to accept the government's offer. In fact, the transcript is quite clear that he was not going to. And for that reason, he cannot prove plain error. But I think more importantly, in going to what I think the court's question's about, I'm sorry, I've jumped into my notes, but one thing I do want to mention in that regard is Ms. Kerr said at the start, she clarified some record points, and one of them was about the benefit of a plea agreement. And I believe she said that the plea agreement would keep the court from varying upwards. And to be very clear, the plea agreement that was offered in this case, and I think it's clear from the transcript, would have bound the parties to their recommendation. It was not a plea agreement under Rule 11 C1C that would have bound the court. So in any event, the court could have still varied upward, even under the terms of the plea agreement. I wanted to ask you about the, so you're relying on substantial rights, and I just wanted to ask a question on what you were talking about just a few seconds earlier, which is the reasonable probability standard. There seems to be some disagreement about what that actually means. I view it as analogous to maybe probable cause, where it's not a preponderance of the evidence, it's something less. Maybe there's some cause to believe that he might have gone to trial. Is that the government's view, or does the government adopt the view that it's sort of a more probable than not standard? Well, I think the report says that the view is more probable than not, but I don't think that that's the standard we adopt. The real standard, Your Honor, I think, to look at this is whether the outcome would have been different. And so is there some sort of reasonable probability that the outcome would have been different? And so the cases that we cite that Mr. Harrison says that is leading to more of a preponderance standard are actually pointing out that when there's really nothing in the record for the defendant to point to, and it's really unclear what the defendant's intentions was, then it's still his burden under plain error. And given that lack of clarity, or lack of anything to really hang on to say that the defendant's decision was changed, then he doesn't meet that burden. And I believe it was a Sixth Circuit case that I cited. I don't have the name in front of me. But in reading the case, it makes that point, I think, very clear where I agree that my actual citation does lend some credence to the argument that we were trying to raise the standard. That wasn't the intent, and I don't think that's ultimately what the case that I cited, and I believe it's the Castro case, stand for. And so, did I sufficiently answer the question? Yes, thank you. I have a question, Mr. Casey, about what it is that you believe Mr. Harrison has to prove by a reasonable probability. Is it that he would not have gone to trial and just would have pled guilty in some fashion? Or are you looking it up directly to the pre-offer that he is now seeking a remedy to receive? Would it be enough just to say, well, he just wouldn't have gone to trial but for this Rule 11 error? I think that's an interesting question, and I think there may be a future case that raises it. But in this case, I think it's clear enough that he wouldn't have done either. And the reason why we argue both points is that, in this case, it's clear that he wouldn't have taken the pre-offer because it required him to agree to a range that wasn't acceptable. And he would not have pled without a pre-offer because that would have required him to give up his appeal of his motion to suppress. So, because in this case there's affirmative evidence that he wouldn't have done either type of plea, I don't know if the court needs to legally distinguish the two in this case. Whether there is a distinction, I think at least it's fair to say in this case he wouldn't have done either. That's interesting because you spoke earlier about some of the confusion from the district court about what he needed to do to preserve the opportunity to appeal his motion to suppress. And I think that I can't find in the record that anybody said, you've got to go to trial to preserve that. And I think that's an interesting point. But I was also sort of, what gave me pause was it wasn't as if Mr. Harrison was wanting a jury trial. It seemed to me that a bench trial is, at least in my experience, relatively unusual in the federal system. And it seemed to be, at least on this record, one way to look at it was just his way of saying that the judge, he thought, might give him the sentence of 36 to 47 months or whatever it is that he was wanting. I thought that just the bench trial versus jury trial seemed to be a fact that was relevant, but I wasn't quite sure how to, where to place it. Well, I think it's, I think, Your Honor, you're correct with regard to its relevance. What Mr. Harrison wanted was to be sentenced by Judge Brewer. And so going to trial was the option. I agree with Mr. Curtis, going to trial was the option. He had to do it. And why then he elected a bench trial over jury trial I think kind of becomes immaterial. But I do think it was, I think it was motivated by the desire to stay and be sentenced by Judge Brewer. And I think that that's right. And I think that that goes to, very strongly to this issue of remedy. Three minutes remaining. If I may, we're going to remedy if there's no more questions. And so moving to the question of remedy, I really do think that this court's case in Washington is dispositive. My, I think that cases out of the 5th and 11th Circuit were also very good law, were unusual, and that circuit is the only circuit to really address remedy in this circumstance. Because prior to DeVille, that circuit presumed, had a presumption of error, presumed that you could not have the substantial rights analysis. It was presumed to be error. And so those cases went to remedy. There's really no other circuit in this context that has addressed remedy. And so I think those cases are instructive. But Washington is kind of the only other exception. And in Washington, this circuit, the 8th Circuit, said that unless the defendant requests a different judge for sentencing, then the defendant is not entitled to. And in Washington, I think it's interesting the suggestion and the reply doesn't apply on the facts. I think actually the facts of Washington show why in this case that remedy is even more important. Because in Washington, the defendant did not participate or was not aware of the Rule 11 violation. That's something the court flagged on its own, allowed him out of his plea agreement because of it, and then fully informed of it prior to sentencing. In this case, the defendant fully participated in the Rule 11 violation. And in this case, the defendant was looking for a windfall. I know Mr. Kerr says that that's not what he was looking for, but that's exactly what he was looking for. And I think it goes back to then, in the reply brief, they argue Lafler, and I think for the reasons of Judge Schreier's questions, those were a lot of the reasons I was going to distinguish Lafler. And I do think the fact that this is a rule-based violation rather than a constitutional violation does matter. And I think the citation to the Strickland in constitutional cases were simply to get the standard for what it took to prove a plain error in this context and didn't otherwise suggest that this was constitutionalized. There's many cases that say Rule 11 is not constitutional. But I think more important is that Lafler, on its own terms, doesn't help. And Lafler, on its own terms, says that it would be unjust to characterize the likelihood of a different outcome as a legitimate prejudice where the defendant would receive a windfall as a result of the application of an incorrect legal principle or defense strategy outside the law. Time has expired. If I may continue? Yes, yes. Please finish your thought. And here, where the defendant is fully aware of the Rule 11 violation, is sort of wanting the Rule 11 violation, and is really trying to forum shop and pick a particular judge to sentence them because of the Rule 11 violation. I think any result where the defendant would get a windfall and would get a benefit of, well, it didn't work out the way I wanted, so I get to go back and try again, is foreclosed by Lafler and foreclosed by that reasoning in Lafler. So I don't think Lafler applies any of these facts in any event. But in any event, I think also Morris forecloses the remedy that is sought. The appropriate remedy would be to respect the verdict, which the government did. There's no allegation that the trial was unfair. And given that, respect the verdict and either affirm or at most remain for resentencing. Thank you, Mr. Casey. Before we let you go, Judge Strauss, do you have any additional questions for Mr. Casey? Judge Strauss? We'll shift to you for now, Judge Wallman. Do you have any questions? No, I do not. Thank you. And I'll try one more time. Is Judge Strauss still on the line? Could the court determine whether Judge Strauss has been dropped from the call? We are showing that he is still on line. Well, if he comes back with additional questions, Mr. Casey will let you know. Does Ms. Kurz have any rebuttal? Yes. And one was to a question asked by Judge Strauss. Excuse me, Ms. Kurz. Let me just pause one minute because I do want to make sure that Judge Strauss is still on the line and is able to hear. Okay. And I'm not sure how to verify that. Clerk, do you have a way of contacting him? Yes, we're going to. He is showing up on the AT&T call manager as still being on the line and not having been dropped, but we will call his chambers right now. Okay. Thank you. Hi, Judge Michael. What we said last week, that you showed up as still on the call. Jim, if you're on the line, would you please call Judge Strauss back? He said that he got a failure message and his phone dropped the call. Judge Kelly, Jim is in the process of calling him back right now. Thank you. We will wait patiently. Thank you. And I am back on, Judge Kelly. We seem to have had technical difficulty and I got dropped from the call, but we seem to be back. Welcome back, Judge Strauss. And do you have a sense of what you last heard from Mr. Casey? Would you like him to answer a question again for you? Well, I don't know if, no. I mean, I'll go back and listen to, I don't know if we're going to have a recording of some sort, but I'll go back and listen to whatever I missed. But I did want to ask about sort of the issue of the remedy, which is you have, the government has admitted that it was there, it was plainly erroneous, and where I think we got at earlier was the substantial rights analysis. Suppose we get past that, what do you think the appropriate remedy would be? Well, I think under the Washington case, your Honor, the appropriate remedy is nothing. Is that there is no remedy where the defendant sought, actively sought to be sentenced by a particular judge and did not object and ask for a different judge. So it's appropriate really in this case even more so than Washington, because in Washington the defendant didn't even know about the Rule 11 violation. Whereas in this case the defendant actively participated in the Rule 11 violation. And in fact, was using that violation, their desire was to be sentenced by this particular judge. And I know I'm repeating for those who were previously on the call, but the suggestion that the remedy should be from Lafleur, I think, is, this was in the reply brief, so I decided that's not an opportunity to brief, but I think for some of the reasons of your questions previously, particularly that this Rule 11 violation is not constitutional, is one reason not to look to Lafleur. While there were some constitutional cases that helped provide what the appropriate plain error standard would be in a Rule 11 context, that doesn't mean that Rule 11 is somehow constitutionalized. There's many cases that say it's not. What about the lesser remedy, though, of undoing basically anything that happened from the putting the parties back in square one? Well, I don't think that that, for the government, is the lesser remedy, Your Honor. Because the government was asked to meet its burden at trial, and did. And there's no objection to the fairness or any other objection to that trial verdict. And so I do think that asking the government then, because this is not a violation the government even participated in. This is one that the defendant participated in and sought to benefit from. And the government then asking it to meet its burden, to prove, again, maybe in front of a jury this time, maybe in front of a different judge, but because there's no allegation of unfairness in the trial, I believe that his guilt has been adjudicated. And so any remedy, any appropriate remedy, has to respect that guilty verdict. Let me ask one additional follow-up question, which is, I know the pressure point in this case is the substantial rights analysis, and I apologize if this is ground that everyone has already sort of tread over. But when you get to the fourth requirement of plain air review, the public integrity, the harm to the public, the integrity, the public reputation, et cetera, of judicial proceedings, do you think that Judge Boo's comments, comparing his record on sentencing defendants, probably by itself satisfies that fourth requirement? Because it sort of suggests that justice is not even-handed among the judges in that particular district. And so I wonder if really all we're talking about is that third requirement. No, all we're talking about is the third requirement. We do not argue with the fourth requirement, only to point out, though, that it comes after. It is not. I think that sometimes people look at plain air as being a four-prong test. It's not. You need to meet the first three prongs before the court then, in its discretion, considers the fourth. And the government, in its belief, is making no argument that were the first three met – now, we argue the third prong is not met – but were it met, were the court found it met, that the court should still nonetheless affirm. Thank you. And the last thing I did want to point out on the Lafleur test is that even Lafleur says it's not appropriate, this remedy wouldn't be appropriate if the defendant were seeking a landfall. And that's precisely what this defendant is looking for. This defendant tried to make a deal, tried to benefit from the Rule 11 violation, and never objected, never asked for a different judge, never raised the possibility of the Rule 11 violation. The government was unaware of it. It's only afterwards, when the defendant didn't get the result that he wanted, that he is now coming to this court and asking for a remedy. And even under Lafleur, the Lafleur remedy wouldn't apply when the defendant is looking for a landfall, and so even if the court were to look at that as a possible avenue for crafting a remedy, it wouldn't be appropriate in this case. And if there's no further questions, I believe I'm done. Judge Rollman, in light of the follow-up questions, do you have anything else you would like to ask, Mr. Casey? No, I don't, Judge. Thank you. All right. Well, thank you, Mr. Casey. We appreciate your argument. And now, Ms. Kurz, I think we're ready for your rebuttal. Thank you. Judge Strass had an earlier question, I think inquiring about the meaning of the reasonable probability standard. There's a footnote in Dominguez-Benitez that I think answers your question, footnote 9, and it says, this is not a preponderance of the evidence standard. So it's not a, is it more likely than not that Mr. Harrison would have pled guilty. It's not tied to preponderance, clear and convincing evidence. It's just simply the strickle and ineffectiveness question of are we confident that causes us to doubt the outcome. And so Castro, an 11th Circuit case, I believe, that was cited by the government, uses this language of, well, if it's equally plausible, you know, that he would have gone to trial or he would have pled guilty, then you have to find for the government. I think Castro, that 11th Circuit case, I would really caution because I think they're using the incorrect standard. The argument that he received a fair trial and a free sentencing means there's no remedy here. Again, that reasoning is rejected in Loeffler. There the court said the fairness of the trial and the sentencing didn't cure the fact that defense counsel had failed to convey a pre-offer to his client. As far as the desire to be able to appeal from his motion to suppress, I agree with Mr. Casey. There's mention of that early on in the pretrial conference. But by the end of that conference, on page 20, after Judge Booth has told Mr. Harrison, you're not going to get a redo on appeal. The circuit is not going to reverse your motion to suppress. Defense counsel told Mr. Harrison the same thing and Mr. Harrison took that to heart and said, well, it doesn't sound like I'm going to get a redo anyway. So I don't think that was his primary motivation. Now, did he want the three to four years? True enough, he suggested that that's what the case was worth. Consider that in my brief, I talk about how he wasn't informed that he would lose acceptance of responsibility, the three-point reduction. Let's posit the opposite happening. Let's say he knew that he was going to lose acceptance of responsibility. The record doesn't say, but that would be a plausible thing for a counsel to have advised him. In that case, by choosing Judge Booth, he is choosing the higher guideline range. Okay. Thank you very much, judges. Go ahead. Go ahead, Ms. Kruse. Okay. Yes. So I was going to say that if he knew that he was going to lose acceptance of responsibility, he is deliberately choosing the 92 to 115 guideline range above what the pre-bargain called for was the 70 to 87. And this is what I meant early on in my argument where I said the question of pleading versus trial is almost tangential because what he wants is to have Judge Booth sentence him and he is willing to even go to a higher guideline range if we assume that he was aware he would be denied acceptance. Well, that was my thought on that. I won't try to squeeze any more in. Well, I'll just go one more round. Judge Strach, do you have any follow-up questions for Ms. Kruse? No, I don't. Thanks, Judge. Judge Wolman? No. All right. Well, thank you both for making yourselves available for our telephone argument today. It's been very helpful, very informative. We appreciate your arguments and your briefing, and we will take the matter under advisement. I also want to thank the clerk's office for making this all happen and helping us out to get through this. I think it went pretty well, all things considered. So we appreciate your assistance there in St. Louis also. So to all, please stay safe and healthy, and if there's nothing further,